ORIGINAL

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| ANGELA MAE GLASSCOCK, | * | |
| Debtor/Appellant, | * | |
| vs. | * | CIVIL ACTION NO. |
| | * | CV 105-195 |
| BANKWEST, INC. and ADVANCE AMERICA, | * | |
| Appellees. | * | |

O R D E R

Appellant Angela Mae Glasscock ("Glasscock"), the debtor in the underlying Chapter 13 bankruptcy case (Case No. 03-10414), appeals the decision of the United States Bankruptcy Court, Southern District of Georgia, to grant Appellees' joint motion for summary judgment, wherein it was determined as a matter of law that Appellee BankWest, Inc., was the "true lender" of the loan subject to a proof of claim in the Chapter 13 case. (See Order of Sept. 26, 2005, R. on Appeal No. 51.) This Court heard oral argument on this issue on March 29, 2007. For the following reasons, the Bankruptcy Court's Order of September 26, 2005, is **REVERSED and REMANDED**.

## I. STATEMENT OF FACTS

On April 16, 2002, Glasscock applied for and obtained a short-term loan of $300.00 in a "payday" lending store operated by Appellee Advance America. (R. on Appeal No. 44, Berg Aff., Ex. A-3.) Advance America is a Delaware corporation with its principal place of business in South Carolina. It is authorized by the Secretary of State to transact business in Georgia. (R. on Appeal No. 44, Laney Aff. ¶ 3.) As of May 2004, Advance America operated 89 "payday" lending stores in Georgia. (Id.)

In her loan agreement, Glasscock promised to repay the principal sum, plus a $51.00 finance charge, on or before May 1, 2002. (Berg Aff., Ex. A-3.) Because loans of such short maturation often coincide with the borrower's next payday, they are commonly called "payday loans." As security for this payday loan, Glasscock drew a personal, post-dated check for $351.00. (Id.)

The loan agreement also provided that in the event her check was dishonored, Glasscock would pay an additional returned check fee of $20.00. (Id.) Glasscock defaulted on the loan, and her bank dishonored the personal check. (Id. ¶ 12, Ex. A-4.)

On January 31, 2003, Glasscock filed for relief under Chapter 13 of the United States Bankruptcy Code in the

Southern District of Georgia (Case No. 03-10414). On February 10, 2003, Advance America filed an unsecured proof of claim in the amount of $351.00 for principal and interest due on the note. (R. on Appeal No. 6.) On March 10, 2003, Glasscock filed an adversarial complaint, alleging that the fees charged on the payday loan were in excess of those allowed by law. (R. on Appeal No. 14.) Thereafter, on April 9, 2003, Advance America filed an amended proof of claim for $371.00, including the returned check fee. In the amended proof of claim, Advance America identifies itself as an agent filing on behalf of its principal, BankWest, Inc. (R. on Appeal No. 7.) Appellee BankWest is a federally-insured state bank chartered and located in South Dakota. It has no physical location in Georgia.

According to Appellees, BankWest contracted with Advance America to act as BankWest's "fiscal agent" in Georgia. This agreement is memorialized in a Marketing and Servicing Agreement, dated July 31, 2001 ("M&S Agreement").[1] Under the M&S Agreement, Advance America is responsible for establishing retail stores wherein potential borrowers may apply for, obtain and repay loans. Advance America may market and service loans using BankWest's name and logo, provided that

---

[1] The M&S Agreement is attached as Exhibit A-1 to the affidavit of Ms. Nancy Berg. (R. on Appeal No. 44.)

all advertising and promotions identify BankWest as the lender. In addition to marketing the loans, Advance America collects payments on the loans, maintains records, and reports to BankWest. Advance America pays the costs of operating its stores, including rent, employee salaries and benefits, equipment, fixtures and improvements, taxes, advertising, and record-keeping.

Pursuant to the M&S Agreement, BankWest retains the right to establish the terms and features of the loans including the following: the loan amounts, fees and charges, interest rates, repayment terms, credit limits, and credit standards. BankWest decides whether to extend credit to applicants. BankWest does not hold any ownership interest in Advance America stores, nor do BankWest employees work in Advance America stores. BankWest exercises no authority or control over Advance America except as set forth in the M&S Agreement.

Pursuant further to the M&S Agreement, Advance America does not directly receive proceeds or interest generated by BankWest loans, but instead it deposits receipts in a BankWest account. However, as compensation for its services, BankWest pays Advance America a fee calculated according to a formula set forth in the M&S Agreement. The fee is $13.80 for every

4

$100 loan.[2] Advance America receives no fee on loans not collected.

Contrarily, Glasscock argues that Advance America is not a "fiscal agent" but the *de facto* lender of her loan. Whether Advance America or BankWest is the true lender of the loan determines the extent to which the subject claim is enforceable under applicable non-bankruptcy law. If Advance America is the lender, the subject loan would be illegal and the claim unenforceable since the annual percentage rate ("APR") for the loan was 413.67%, far in excess of allowable interest rates under Georgia usury laws.[3] If BankWest is the lender, however, it would not be subject to the interest rate caps imposed by Georgia law since it is a bank chartered in South Dakota. Instead, it would be subject to South Dakota law, in which there are no limits on how much interest a lender may charge.[4]

---

[2] As noted by the Bankruptcy Court, Advance America's fee on Glasscock's loan would be roughly equal to 81% of the revenue generated by Plaintiff's loan, since:

$(13.80) \times [(300.00/100)] / (51.00) = 0.81176$

(Order of Sept. 25, 2006, at 8 n.1.)

[3] Under the Georgia Industrial Loan Act ("GILA"), the maximum APR that an in-state lender legally can charge on a loan under $3000 is 16%. O.C.G.A. §§ 7-3-1(1) & 7-4-2(a)(2).

[4] Section 27 of the Federal Deposit Insurance Act authorizes any state-chartered, federally insured bank to charge the rate of interest allowed under the laws of its charter states in any other state where it does business. 12

5

In its Order of September 26, 2005, the United States Bankruptcy Court held as a matter of law that BankWest, not Advance America, was the lender. This appeal followed.

## II. ANALYSIS

On bankruptcy appeal, the district court reviews the bankruptcy court's entry of summary judgment de novo. Gray v. Manklow (In re Optical Technologies, Inc.), 246 F.3d 1332, 1335 (11th Cir. 2001). Thus, this Court must determine de novo whether the entry of summary judgment was proper under the facts as presented or whether a genuine issue of material fact precluded summary judgment. See Fed. R. Civ. P. 56(c). The standard for the grant of summary judgment is well established. For purposes of the instant appeal, it is important to note that this Court must view the facts in the light most favorable to Glasscock, the non-moving party, see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [her] favor . . . ." United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal quotation marks omitted).

In its Order of September 26, 2005, the Bankruptcy Court held: "After duly considering the record, I have determined

---

U.S.C. § 1831d(a). GILA explicitly respects this exemption. O.C.G.A.§ 7-3-6; see also O.C.G.A. §§ 7-3-2, -4, -5 & -8.

that there is no genuine issue of material fact. BankWest is [Glasscock's] lender." (Order of Sept. 26, 2005, at 11.) The Bankruptcy Court began its analysis by examining the loan documents, finding that they plainly and unambiguously identified BankWest as the lender. The Bankruptcy Court then discussed the loan process and reached the same conclusion. (Id. at 11-12.) Finally, the Bankruptcy Court distinguished many of the cases cited by Glasscock to support her contention that Advance America was the true lender. (Id. at 13-17.)

Because review is de novo, this Court is not constrained to the findings of the Bankruptcy Court; nevertheless, the Bankruptcy Court adequately pointed out facts that predominate in favor of finding BankWest as the true lender. Indeed, the various loan documents, such as the loan agreement signed by Glasscock, expressly identify BankWest as the lender. The loan application indicates that the loan was subject to approval by BankWest. Glasscock's personal check was made payable to BankWest. When she received the loan proceeds, Glasscock also received a customer receipt with BankWest's name and address on it, stating: "PLEASE NOTE: Advance America . . . is not affiliated with BankWest, Inc., Pierre, South Dakota, and did not make or approve this loan." (Laney Aff., Ex. 6.) Also, the demand for payment letters sent to Glasscock identify BankWest as the lender and Advance America

7

as its agent. (Id. Ex. 4.) Thus, contrary to Glasscock's counsel's representation at oral argument, Glasscock did not deal solely with Advance America when she took out the payday loan.

Were the inquiry to end here, summary judgment would be appropriate. However, to determine whether a contract is usurious, a court must examine the substance of the transaction, not merely the form. Tribble v. State, 89 Ga. App. 593, 80 S.E.2d 711 (1954); Pope v. Marshall, 78 Ga. 635, 640, 4 S.E. 116, 118 (1887) ("The law intends that a search for usury shall penetrate to the substance."); see also Williams v. Powell, 214 Ga. App. 216, 219, 447 S.E.2d 45, 48 (1994) (stating that courts look to the actual nature of a transaction, rather than the form the parties give to it, to determine usury).

Glasscock urges this Court to look at the substance of the instant payday transaction to find that a genuine issue of material fact exists as to who the true lender is. In order for a genuine issue of material fact to exist, it is incumbent upon Glasscock not to rest upon the allegations of her pleadings but to set forth specific facts showing the existence of a genuine issue of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In this case, Glasscock sets forth the following specific

facts to show that a reasonable inference may be drawn that Advance America is the true lender. Glasscock first points out that Advance America initially filed its proof of claim in its own name with no mention of BankWest. Thereafter, it amended the proof of claim to include BankWest's name after Glasscock filed an adversarial complaint challenging the legality of the loan's fees. Yet, in numerous other bankruptcy cases filed in the Augusta Division of this District, Advance America has filed proofs of claim in only its name, not identifying itself as an agent of BankWest.[5] Glasscock argues that this fact raises an inference that Advance America believes itself to be and holds itself out as the true lender.

Glasscock next urges a closer examination of the M&S Agreement, which reveals that Advance America takes the majority share of the profits and bears the greater risk of loss on the payday loans such that Advance America holds the predominate economic interest.[6] Advance America also pays the

---

[5] This Court may take judicial notice of its own docket entries. See Fed. R. Evid. 201.

[6] Glasscock suggested for the first time at oral argument that this Court's inquiry may end here in accordance with the PayDay Lending Act of 2004, O.C.G.A. §§ 16-17-1 et seq., in that this Act specifically applies to "[a]ny arrangement by which a de facto lender purports to act as the agent for an exempt entity," and defines a de facto lender as an entity that "maintains a predominant economic interest in the revenues generated by the loan." Id. § 16-17-2(b)(4). The PayDay Lending Act, however, was not in existence at the time of the subject loan and for this reason, the Court

9

operating costs of making the loans. Glasscock argues that these facts raise an inference that Advance America is the true lender.

The M&S Agreement also contains an indemnification provision whereby BankWest agrees to generally indemnify Advance America for losses occasioned by Advance America's breaches, negligence or misconduct but expressly refuses to indemnify Advance America for losses occasioned by a ruling that the loans violate state or federal usury laws. Glasscock argues that this provision shows that the parties anticipated legal action against Advance America as the "true lender" on the payday loans.

In the Order of September 26, 2005, the Bankruptcy Court mentions some of these facts in stating the factual background but never refers to them again. In addressing the filing of an amended proof of claim, the Bankruptcy Court noted that such a filing is permissible and thus immaterial to its analysis. It did not consider the negative connotation of Advance America having filed a proof of claim only in its name in this and numerous others cases, yet subsequently amending the proof of claim to add BankWest after Glasscock filed her adversarial complaint.

This Court finds these facts to be material in that, declines to address its import any further.

taken together and viewed in a light most favorable to Glasscock, a reasonable inference could be drawn therefrom that Advance America, not BankWest, is the true lender. This is not to say that Glasscock has set forth a compelling case that Advance America is the true lender, especially in light of the "overwhelming"[7] evidence that BankWest is the true lender. It certainly is not to say that Advance America is the true lender. Indeed, there exists a genuine issue of material fact with respect to who the true lender is, and thus, summary judgment on that issue is precluded.

### III. CONCLUSION

Upon the foregoing, the Bankruptcy Court's Order of September 26, 2005, is hereby **REVERSED**. This case is hereby **REMANDED** to the Bankruptcy Court for proceedings not inconsistent with this Order.

**ORDER ENTERED** at Augusta, Georgia, this _6_ day of April, 2007.

HONORABLE LISA GODBEY WOOD
UNITED STATES DISTRICT JUDGE

---

[7] This is a term used by Appellees in brief, and though not expressly adopted by the Court, it cannot go unmentioned that the greater weight of the evidence compels the same conclusion reached by the Bankruptcy Court, i.e., that BankWest is the true lender. Nevertheless, it is not a court's role on summary judgment to weigh the evidence.

11

# United States District Court
## Southern District of Georgia

ATTORNEYS SERVED:

Roy E. Barnes
John R. Bevis
Robert C. Hagler
John B. Long
Angela Carter Magruder
Patrick J. Rice
B. Amon James, Asst U. S.
    Trustee
Barnee C. Baxter
Clerk, U. S. Bankruptcy

CASE NO:       1:05-cv-195
DATE SERVED:   4/6/07
SERVED BY:     ljf

☐ Copy placed in Minutes
☑ Copy given to Judge
☐ Copy given to Magistrate